# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| GREENPOINT CREDIT, L.L.C., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:06-CV-1845 CAS ) |
| MISSOURI DEPARTMENT OF REVENUE, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This removed matter is before the Court on plaintiff Greenpoint Credit, L.L.C.'s ("Greenpoint") motion for attorneys' fees and costs. The defendants are the Missouri Department of Revenue ("MDOR") and individual defendants Trish Vincent, Carol Russel Fischer, Quentin Wilson and Janette Lohman. Defendant Vincent is the current Director of the MDOR, and the other individual defendants are former Directors of the MDOR. The defendants oppose the motion for fees and costs. Also pending in this matter are motions for summary judgment filed by each side. The parties informally represented to the Court that they have mediated this matter and settled the issues underlying the summary judgment motions, except for the attorneys' fee issues contained in the instant motion.[1] For the following reasons, the Court concludes that Greenpoint's motion for attorneys' fees and costs should be granted. The Court will deny as moot the parties' motions for summary judgment.

**Background**.

The procedural background of this case is lengthy and complicated. In 1992, the State of Missouri enacted certain "Abandoned Manufactured Home - Title Disposition" laws (the "abandoned title statutes"). See Mo. Rev. Stat. §§ 700.525 - 700.541 (2000). The abandoned title statutes permitted land owners to apply for and obtain title to manufactured (mobile) homes that were

---

[1]The parties have not disclosed to the Court the nature or terms of their resolution of the underlying issues in the case.

abandoned on a land owner's property. The titles to abandoned manufactured homes were issued by the MDOR in the name of the land owner, and served to extinguish any interest of the prior owner or any lienholder.[2]

Two lenders, Greenpoint and Conseco Finance Servicing Corporation ("Conseco"), filed separate actions in the Circuit Court of St. Louis County, Missouri in 2001, challenging the constitutionality of the abandoned title statutes and seeking injunctive relief against their enforcement. Greenpoint and Conseco were represented by the same attorneys. In both the Greenpoint and Conseco cases, the state circuit court entered a brief judgment which permanently enjoined the MDOR from issuing certificates of title under the abandoned title statutes, on the basis that the statutes unconstitutionally deprived homeowners and secured parties of their property interests in mobile homes without adequate notice or other process, and were unconstitutionally vague. The MDOR filed an appeal in both actions.

The Missouri Supreme Court reversed the judgment in each case. In the Conseco case, the state supreme court held that the trial court erred in reaching the constitutional issues presented without first permitting the MDOR to file an answer or show cause why an injunction should not issue, and to put on evidence or conduct discovery on those issues. Conseco Fin. Serv. Corp. v. Missouri Dep't of Revenue, 98 S.W.3d 540, 541 (Mo. 2003) (en banc) (Conseco I). The Missouri Supreme Court also concluded Conseco did not establish that it had standing to challenge the statutes, because it did not show that it had an ownership interest in the home at issue that was repossessed and the MDOR had denied Conseco's allegation that it had a security interest in the home. Id. at 544-46; see also Conseco Fin. Serv. Corp. v. Missouri Dep't of Revenue, 195 S.W.3d 410, 413 n.3 (Mo. 2006) (en banc) (Conseco II). Conseco I was remanded with directions to permit the MDOR to respond to Conseco's claims and to conduct discovery in the case.

---

[2]The statutes were intended to address the problems that arise when a person abandons a manufactured home in a mobile home park, without the landlord's consent. Conseco Fin. Serv. Corp. v. Missouri Dep't of Revenue, 98 S.W.3d 540, 543 & n.2 (Mo. 2003) (en banc).

On the same day Conseco I was issued, the Missouri Supreme Court issued an opinion in the Greenpoint case. Relying on the lengthier Conseco I opinion, the Court stated,

> In Conseco, this Court held the court erred in reaching the identical constitutional issues raised as to secured parties without first reaching the standing issue and preliminary factual issues presented, and remanded for consideration of such issues. The same reasoning applies here. This Court remands so that the court can consider these issues raised as to secured parties before determining the constitutional issues raised.

Greenpoint Credit, L.L.C. v. Missouri Dep't of Revenue, 98 S.W.3d 553, 554 (Mo. 2003) (en banc). The Missouri Supreme Court also noted that Greenpoint did not have standing to raise issues concerning the constitutionality of the abandoned title statutes' homeowner-related provisions, because "it has failed to show that it has standing to do so as a representative of homeowners or in its own right, either because it owns homes that it has repossessed that may be subject to [the abandoned title statutes], or because the homeowner provisions affect it as a secured party[.]" Greenpoint, 98 S.W.3d at 555.

Following remand, the state trial court issued an agreed preliminary injunction in the Greenpoint case on May 14, 2003. Joint Statement of the Case at 3 (Doc. 11). The agreed preliminary injunction enjoined the MDOR "from processing any application for an abandoned manufactured home title under Chapter 700, RSMo, where such application involves a title in which plaintiff GreenPoint Credit Corp. is currently listed as a lienholder on the manufactured home title." See Agreed Preliminary Injunction, Notice of Removal (Doc. 1.2).

On January 18, 2005, the parties filed an Agreed Stipulation of Facts in the state court. See Agreed Stipulation of Facts, Notice of Removal (Doc. 1.1). The Agreed Stipulation of Facts states, inter alia, that the MDOR had issued titles to manufactured homes free and clear of the interest of the owner and lienholder under the abandoned title statutes, and that Greenpoint had requested the MDOR not to issue title under the abandoned title statutes for at least three manufactured homes on which Greenpoint was a lienholder. Id. at 3, 4, ¶¶ 14, 21, and exhibits thereto.

In the separate Conseco case, the state trial court granted summary judgment in favor of Conseco and against the MDOR on May 18, 2005. See Judgment, Order and Decree of May 18,

2005 (Doc. 37, Ex. 1). The state court's brief judgment held that the abandoned title statutes were unconstitutional, and permanently enjoined the MDOR from issuing titles thereunder. Id. The MDOR appealed the judgment to the Missouri Supreme Court in Conseco II, 195 S.W.3d at 421. The parties agreed to stay the Greenpoint case pending the Missouri Supreme Court's ruling in Conseco II. Joint Statement of the Case at 2. The state trial court's docket sheet reflects that on June 30, 2005, counsel represented to the state court that the issues in the Greenpoint case would be resolved by an appeal filed in the Conseco II case, and the case was stayed pending the result of the appeal. See Minutes of Proceedings at 5, Notice of Removal (Doc. 1.1).

In Conseco II, the Missouri Supreme Court affirmed the state trial court's judgment, and concluded that the abandoned title statutes violated the "due process rights of homeowners because it deprives them of their property interests in manufactured homes without adequate notice or opportunity for hearing and as to Conseco because the notice provided was inadequate to allow it to protect its interests." 195 S.W.3d at 421. Because issuance of abandoned home titles was the sole purpose of the abandoned title statutes, the court determined that nothing was left to be enforced in light of the invalidity of the notice and hearing provisions. Id.

Conseco then moved for an award of its attorneys' fees and costs in the state trial court as a prevailing party. The MDOR opposed the motion, but it was granted. The trial court ordered the MDOR to pay Conseco attorneys' fees of $79,553.06 and costs of $2,598.95. See Judgment, Order and Decree of May 3, 2007 (Doc. 37, Ex. 2).

After the Conseco II decision was issued, Greenpoint sought and was granted leave to file an amended petition, despite its earlier representation to the state court that the issues in its case would be resolved by the Missouri Supreme Court's decision. Greenpoint filed an Amended Class Action Petition for Damages on December 18, 2006, which added the four individual defendants and for the first time specifically asserted claims under 42 U.S.C. § 1983. The defendants removed the case to this Court on December 29, 2006, based on federal question jurisdiction. See Notice of Removal at 1-2 (Doc. 1).

Following removal to federal court, the Court ordered plaintiff to either (1) file a motion for determination whether the case was to be maintained as a class action, or (2) advise the Court in writing if plaintiff no longer wished the case to proceed as a class action. (Doc. 8). Plaintiff filed a notice stating that it did not intend to pursue the case as a class action. (Doc. 10). The Court also ordered the parties to file a joint statement of the case, including a brief description of the underlying facts, a detailed description of the procedural history of the case, and a full description of all substantive orders issued by the state court prior to removal. (Doc. 9). The parties filed the Joint Statement of the Case in response to the order. (Doc. 11).

The Court conducted a Rule 16 scheduling conference on April 5, 2007, and issued a Case Management Order the same day. The case was referred to mediation on April 30, 2007. On June 12, 2007, plaintiff was granted leave to file a Second Amended Complaint, which omitted class action allegations. The Second Amended Complaint seeks a permanent injunction against the MDOR to enjoin it from issuing titles under the abandoned title statutes as to any manufactured homes on which Greenpoint is the lienholder. Greenpoint also seeks its costs and attorneys' fees, or in the alternative, a declaratory judgment requiring the individual defendants "to take all steps necessary to restore plaintiff and all others similarly situated the property interests of which they were unconstitutionally deprived."

**Legal Standard**.

The Eighth Circuit recently addressed the availability of attorneys' fees pursuant to 42 U.S.C. § 1988, and the standards for determining whether a party may be considered a "prevailing party" under the statute:

> Parties to a lawsuit generally must bear their own costs, see <u>Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.</u>, 532 U.S. 598, 602 (2001), but Congress has provided in 42 U.S.C. § 1988(b) that "[i]n any action or proceeding to enforce a provision of [various civil rights statutes including 42 U.S.C. § 1983] the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." Accordingly, a "plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).

> The test for prevailing party explained by Supreme Court is that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111–12 (1992); see Texas State Teachers Ass'n v. Garland Indep. School Dist., 489 U.S. 782, 792–93 (1989) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."). The Supreme Court refined this standard in Buckhannon when it rejected the "catalyst" theory, which had been endorsed by all but one of the circuit courts and which permitted a plaintiff to recover fees if its lawsuit achieved the desired result through a voluntary change in the defendant's conduct. 532 U.S. at 602, 605. The Court held instead that a party must obtain a judicially sanctioned material alteration of the legal relationship between the parties to the lawsuit to achieve prevailing party status. Id. at 604–05. Surveying its past cases the Court determined that enforceable judgments on the merits and consent decrees create the requisite material alteration in the parties' legal relationship to achieve prevailing party status. See id. at 603–04. Although the statute at issue in Buckhannon was a provision of the Fair Housing Act, the Court's analysis applies generally to fee shifting statutes incorporating the "prevailing party" language. See id. at 603; Cody v. Hillard, 304 F.3d 767, 773 n.3 (8th Cir. 2002) (recognizing that the "prevailing party" analysis in Buckhannon applies generally to fee shifting statutes).

Advantage Media, L.L.C. v. City of Hopkins, Minn., No. 07-1441, __ F.3d __, 2008 WL 655599, *3 (8th Cir. Jan. 8, 2008).

A prevailing party should ordinarily be awarded attorneys' fees unless special circumstances would render the recovery unjust. Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412 (1978).

**The Parties' Arguments**.

In its motion for attorneys' fees, Greenpoint relies on the catalyst theory of prevailing party status under § 1988, citing St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Local 73 v. City of St. Louis, 96 F.3d 323, 330-31 (8th Cir. 1996). See Pl.'s Mem. in Supp. at 2 (Doc. 38). Greenpoint points to the Conseco II case as a basis for a determination that it is a prevailing party entitled to attorneys' fees, and asserts that this case and the Conseco case served as a catalyst for the issuance of a permanent injunction against the MDOR's future issuance of titles under the abandoned title statutes. Pl.'s Mot. for Atty. Fees at 3, ¶ 17 (Doc. 37). Greenpoint states that it and Conseco shared the burden and cost of prosecuting their claims, Conseco has been awarded its share of

6

attorneys' fees incurred in the successful prosecution of the claims, and Greenpoint should similarly be awarded its costs and fees. Id., ¶¶ 18-20.

The defendants respond that Greenpoint has not prevailed on any element of the litigation since the time it raised § 1983 claims, and cannot recover under the catalyst theory, citing Buckhannon. Defendants assert that the state court's issuance of a preliminary injunction in Greenpoint's favor does not confer prevailing party status on Greenpoint, because the injunction merely granted temporary relief that maintained the status quo, citing Northern Cheyenne Tribe v. Jackson, 433 F.3d 1083, 1086 (8th Cir. 2006) (" a preliminary injunction granting temporary relief that merely maintains the status quo does not confer prevailing party status.").

Defendants further respond that Conseco and Greenpoint are two different plaintiffs, in different positions. Defendants state that Conseco lost its lien on a particular manufactured home, which was the basis of its suit, and was joined in its suit by the Wrens, the homeowners who lost their title to the home. Conseco and the Wrens claimed actual damages due to the actions of the MDOR and obtained a permanent injunction although they did not obtain damages, and as a result were prevailing parties for purposes of §§ 1983 and 1988.

Defendants assert that Greenpoint's suit, in contrast, does not share these elements. Defendants state that the Second Amended Complaint is silent as to any particular home where Greenpoint's lien was lost due to the MDOR's issuance of a title under the abandoned title statutes, and that Greenpoint did not obtain a permanent injunction. Defendants assert that merely because Greenpoint raised some of the same arguments in its suit as another litigant does not make Greenpoint a prevailing party entitled to attorneys' fees.[3]

---

[3]Defendants note that in the Amended Class Action Petition originally filed in state court, Greenpoint alleged that it was deprived of property rights in certain specific homes listed in paragraph 29 of the petition, but defendants' Answer stated no abandoned title was issued for those homes. Defendants therefore assert that "it is unclear at this time what financial loss occurred to [Greenpoint], if any, due to the abandonment of those homes." Defs.' Opp. at 4. The defendants did not develop their argument further and the point of the argument is not clear to the Court.

It is well established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect. In re Atlas Van Lines, Inc., 209 F.3d 1064 (8th Cir.

Greenpoint responds that Buckhannon does not bar its claim for attorneys' fees, because the defendants never voluntarily modified their conduct, but rather only changed their conduct after a judicially sanctioned material alteration of the relationship between the parties, specifically an injunction. Greenpoint cites a pre-Buckhannon decision, Bishop v. Committee on Professional Ethics and Conduct of Iowa State Bar Ass'n, 686 F.2d 1278, 1290 (8th Cir. 1982), for the proposition that preliminary or temporary relief granted by the district court may be sufficient to make the plaintiff a prevailing party under § 1988. Greenpoint recites the procedural history of this case, with emphasis on the Missouri Supreme Court's Conseco II decision affirming the permanent injunction Conseco obtained against the MDOR. Greenpoint asserts that it is "clearly . . . a 'prevailing party,' because this case involves judicially sanctioned remedies which changed the [MDOR's] conduct." Pl.'s Reply at 3-4 (Doc. 41).

**Discussion**.

**A. Greenpoint is a Prevailing Party**.

As a threshold matter, the Court disagrees with defendants' assertion that Greenpoint has not obtained any relief since it asserted a claim under § 1983. Although Greenpoint did not cite § 1983 in its pleadings until it filed the Amended Class Action Petition for Damages, it has at all times sought relief for allegation violations of its rights under the United States Constitution. "Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States." Wilson v. Spain, 209 F.3d 713, 715 (8th Cir. 2000). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

---

2000). Defendants are correct that the Second Amended Complaint does not contain any facts to support a claim for damages. The Court notes, however, that the parties stipulated in state court that Greenpoint had responded to notices sent by the MDOR concerning abandoned titles of three manufactured homes, and that the MDOR had issued titles to manufactured homes free and clear of the interests of the owner and lienholder. See Agreed Stipulation of Facts, ¶¶ 21, 14. Thus, to the extent defendants may contend that Greenpoint lacks standing to bring this action, the Court rejects the argument.

Thus, to evaluate a plaintiff's § 1983 claims, the Court must look to the complaint for a description of the constitutional rights alleged to be at issue.

Greenpoint's original petition asserted that the abandoned title statutes were unconstitutional and violated Greenpoint's rights under, inter alia, the Fourteenth Amendment to the United States Constitution. See Verified Petition at 6, ¶¶ 23, 25, 27. A state agency acting pursuant to state statutes is a state actor. Greenpoint asserted throughout this action that the MDOR violated its federal constitutional right not to be deprived of its property. The original Petition therefore was a proceeding to enforce § 1983 even though it did not cite the statute, and an award of attorneys' fees to Greenpoint under § 1988 could be based on action taken by the state court before Greenpoint filed its amended petition. Cf. Goss v. City of Little Rock, Ark., 151 F.3d 861, 865-66 (8th Cir. 1998) (holding that a landowner's meritorious takings action against city arising from city's requirement that landowner dedicate portion of property for use as highway as condition of city's approving rezoning application was a "proceeding to enforce" § 1983, so as to permit award of attorney fees to landowner, even though the landowner did not plead or argue § 1983), cert. denied, 526 U.S. 1050 (1999).[4]

Because Greenpoint has not obtained any relief in this Court, if Greenpoint is a prevailing party under § 1988 that status must be based on relief obtained in state court. Greenpoint asserts three grounds to support its status as a prevailing party: (1) the catalyst theory; (2) Conseco's success in the state court litigation, culminating in the Missouri Supreme Court's Conseco II decision; and (3) Greenpoint's own success in obtaining injunctive relief in this action while in state court.

Greenpoint's first two grounds are without merit. The Supreme Court's Buckhannon decision precludes any reliance on the catalyst theory, which was the initial basis for Greenpoint's motion for

---

[4]Because the Court concludes that plaintiff's original Petition asserted a federal constitutional claim, this action was removable to federal court at the time it was filed, and did not first become removable when plaintiff filed the Amended Class Action Petition for Damages in 2006. The notice of removal of a civil suit must be filed within thirty days after the defendant's receipt of the initial pleading setting forth the claim for relief. See 28 U.S.C. § 1446(b). Greenpoint could have filed a motion to remand the case asserting untimely removal, but failed to do so. A procedural defect in removal, such as untimeliness, does not affect the Court's subject matter jurisdiction and thus may be waived. Koehnen v. Herald Fire Ins. Co., 89 F.3d 525, 528 (8th Cir. 1996).

fees.  The Court rejects Greenpoint's second assertion, made without citation to any legal authority, that it can be considered a prevailing party based on Conseco's success in a separate lawsuit.  "[T]o be a prevailing party entitled to a statutory attorneys' fee award, <u>a party</u> must obtain a judicially sanctioned material alteration <u>of the legal relationship of the parties to the lawsuit</u>."  <u>Northern Cheyenne Tribe</u>, 433 F.3d at 1085 (citing <u>Buckhannon</u>, 532 U.S. at 604-05) (emphasis added).  Although Greenpoint may derive benefit from the outcome of Conseco's lawsuit against the MDOR, it cannot directly rely on Conseco's success in the other action to support its own request for attorneys' fees as a prevailing party.  In order to obtain a fee award, Greenpoint must establish that it obtained a judicially sanctioned material alteration of the legal relationship between it and the defendants.  <u>Northern Cheyenne Tribe</u>, <u>id</u>.

Greenpoint asserts that it is a prevailing party because it obtained a permanent injunction and judgment against the MDOR in state court, but this assertion is unsound because the judgment Greenpoint obtained was reversed by the Missouri Supreme Court.  <u>See</u> <u>Greenpoint</u>, 98 S.W.3d 553. The only relief Greenpoint obtained in state court that has not been reversed is the agreed preliminary injunction of May 14, 2003, which was issued following remand of the case from the Missouri Supreme Court.  The agreed preliminary injunction enjoined the MDOR from processing any application for an abandoned manufactured home title under the abandoned title statutes, "where such application involves a title in which the plaintiff GreenPoint Credit Corp. is currently listed as a lienholder on the manufactured home title" and where such an "application involve[s] a title in which Associates Housing, Ford Consumer Finance and/or CitiCapital are currently listed as lienholders." Agreed Preliminary Injunction at 1.  The agreed preliminary injunction by its terms "shall remain in effect until such time as the [state] Court modifies the preliminary injunction, terminates the preliminary injunction, or enters a judgment."  <u>Id.</u>  The parties do not argue and the record does not indicate that the preliminary injunction was modified or terminated, and no final judgment has been entered.

This Court has not modified or terminated the agreed preliminary injunction, and it remains in effect following removal:

> Any orders or rulings issued by the state court prior to removal are not conclusive in the federal action after removal; however, it is well-settled that they do remain binding on the parties until formally set aside by the federal district court. Indeed, the third paragraph of [28 U.S.C.] Section 1450 provides that "all injunctions, orders and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."

14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3738 (2d ed. 1987) (footnotes omitted); see Palmisano v. Allina Health Sys., Inc., 190 F.3d 881, 885 (8th Cir. 1999) (after removal, state court orders remain in effect); see also 16 Moore's Federal Practice § 107.31[3] (3d ed. 2007) (after removal, "Interlocutory orders for preliminary relief entered by the state court, such as injunctions, . . . remain in effect pursuant to federal law.").

The Eighth Circuit has "recognized that a preliminary injunction can in some instances carry the judicial imprimatur required by Buckhannon to convey prevailing party status." Advantage Media, 2008 WL 65599, *3 (citing Northern Cheyenne Tribe, 433 F.3d at 1086 ("[S]ome preliminary injunctions are sufficiently akin to final relief on the merits to confer prevailing party status."); Dupuy v. Samuels, 423 F.3d 714, 723 & n.4 (7th Cir. 2005) (recognizing that preliminary injunctions can meet Buckhannon's judicial imprimatur requirement); Watson v. County of Riverside, 300 F.3d 1092, 1095-96 (9th Cir. 2002) (same), cert. denied, 538 U.S. 923 (2003)). In Northern Cheyenne Tribe, the plaintiff tribes obtained a preliminary injunction to halt the construction of a shooting range in a mountain formation that contained spiritual significance for them. The Eighth Circuit concluded that the preliminary injunction merely maintained the status quo, and did not effect a material alteration in the parties' legal relationship, and therefore the plaintiffs therefore were not prevailing parties under § 1988. Northern Cheyenne, 433 F.3d at 1087.

The issue before this Court is whether the judicially-sanctioned preliminary injunction in this case effected a material alteration in the parties' legal relationship, or merely maintained the status quo. As stated above, the agreed preliminary injunction prohibits the MDOR from enforcing the abandoned title statutes with respect to homes on which Greenpoint is a lienholder.

11

In the Advantage Media case, plaintiff Advantage obtained a preliminary injunction halting the enforcement of a city's sign code, claiming that the code was unconstitutional under the First and Fourteenth Amendments. The district court determined that the sign code was constitutionally suspect and preliminarily enjoined the city from enforcing it. Both parties filed motions for summary judgment, and the court denied Advantage's motion and granted in part and denied in part the city's motion. The district court denied Advantage's interim request for fees, holding that it was not a prevailing party at that stage because the injunction "was preliminary in nature and was not a decision that granted actual relief on the merits." Advantage Media, L.L.C. v. City of Hopkins, 408 F.Supp.2d 780, 796 (D. Minn. 2006). The case subsequently went to trial and the jury determined that the city had denied Advantage's sign applications on a content-neutral basis (because of the size of the signs) and awarded no damages to the plaintiff.

On appeal, Advantage argued that the district court erroneously concluded that the preliminary injunction did not bring about a material change in the parties' legal relationship, and that it was a prevailing party under § 1988. The Eighth Circuit disagreed, noting that Advantage filed suit in order to erect its signs in the city, to obtain damages for violation of its constitutional right to free speech, and to enjoin the city from enforcing a purportedly unconstitutional ordinance, but achieved none of these goals. Advantage Media, 2008 WL 65599, *4. Although Advantage's lawsuit resulted in the alteration of severally potentially unconstitutional provisions in the city's sign code, Advantage could not be considered a prevailing party on that basis, because of the Supreme Court's rejection of the "catalyst" theory. Id.

In the portion of its analysis most relevant to this case, the Eighth Circuit stated, "Advantage has not shown that the ordinance was unconstitutional as applied to it, and the issuance of the preliminary injunction thus has no impact on the relationship between Advantage and the city." 2008 WL 65599, *4 (citing Farrar, 506 U.S. at 113-14 (something more than a technical victory is required to confer prevailing party status)). The Court concluded, "Because the constitutionally suspect provisions of the sign ordinance were never applied to Advantage, the preliminary injunction effected

12

no material alteration in the parties' legal relationship." Advantage Media, id. at *4. The Eighth Circuit found that its conclusion was bolstered by Sole v. Wyner, 127 S. Ct. 2188 (2007), in which the Supreme Court held that a plaintiff who secures a preliminary injunction cannot be a prevailing party when the injunction is later reversed, dissolved on the merits, or the plaintiff ultimately loses on the merits in the same case. Id. at *5.

The effect of the agreed preliminary injunction in this case is to prohibit the MDOR from processing any application for an abandoned manufactured home under the abandoned title statutes, where Greenpoint is a lienholder listed on the manufactured home's title. The preliminary injunction thus effected a material alteration in the parties' legal relationship, as Greenpoint can point to a significant effect that the judicial declaration had on the MDOR's behavior toward it. This is in contrast to Advantage Media, where there was a finding that the unconstitutional ordinance was never applied to the plaintiff. The case is also distinguishable from Northern Cheyenne Tribe, where the relief obtained by the plaintiffs was simply "temporary relief pendente lite," i.e., merely in effect while the action was pending.

In addition, it is relevant that the change in the parties' legal relationship that resulted from the preliminary injunction is part of the relief that Greenpoint sought in this action. See Select Milk Producers, Inc. v. Veneman, 304 F.Supp.2d 45, 52 (D.D.C. 2004) (plaintiffs were prevailing parties despite only obtaining a preliminary injunction for two reasons: first, the injunction created a material alteration in the parties' legal relationship, and second, the change in the relationship that resulted from the injunction was the exact relief that plaintiffs sought), aff'd in relevant part sub nom Select Milk Producers, Inc. v. Johanns, 400 F.3d 939, 942 (D.C. Cir. 2005).[5]

---

[5]Although the Agreed Preliminary Injunction is brief and does not address the constitutional issues presented by the case, the Court finds that the state court's action in granting injunctive relief was governed by its assessment of the merits, in light of the state court's earlier grant of a permanent injunction and judgment to Greenpoint based on the constitutional issues (which similarly was a very brief opinion), and where the relief granted in the preliminary injunction was the same relief as sought by Greenpoint.

13

This case is also distinguishable from Advantage Media and Sole because the agreed preliminary injunction has never been reversed or dissolved, and plaintiff has not lost on the merits. No final adjudication has superseded the preliminary injunction ruling and, as previously stated, the parties have represented to the Court that they have resolved the issues between them other than attorneys' fees, so there will be no further proceedings on the merits in this matter. In essence, although the case remains pending, the underlying dispute on the merits of Greenpoint's claim for a permanent injunction was rendered moot by the Missouri Supreme Court's decision in Conseco II, which affirmed the state court's grant of a permanent injunction to another lienholder and prohibited the MDOR's enforcement of the abandoned title statutes.[6]

Several circuits have ruled that attorneys' fees may be awarded in circumstances analogous to this case: after a party has obtained a preliminary injunction and the case subsequently becomes moot. See, e.g., Select Milk Producers, 400 F.3d 939 (plaintiffs were prevailing parties where a preliminary injunction blocked enforcement of a price regulation that had been improperly issued, and thus effected a court-ordered change in the parties' legal relationship, and were entitled to an award of attorneys' fees after the parties stipulated to dismissal of the case as moot); Watson v. County of Riverside, 300 F.3d 1092, 1096 (9th Cir. 2002) (a preliminary injunction carried the judicial imprimatur necessary to satisfy Buckhannon where the plaintiff obtained an injunction preventing the county from using a report at his termination hearing. The case subsequently became moot, and although the claim for permanent injunctive relief was not decided on the merits, it was important to the decision that the "preliminary injunction was not dissolved for lack of entitlement" but rather "was rendered moot" after the employment termination hearing was over, "after the preliminary injunction had done its job."); Young v. City of Chicago, 202 F.3d 1000, 1000-01 (7th Cir. 2000) (upholding an award of attorneys' fees to a plaintiff who obtained a preliminary injunction against the city's establishment of a security

---

[6]The Court notes it is quite different for Greenpoint to argue that it is entitled to prevailing party status because Conseco obtained a favorable decision from the Missouri Supreme Court, than it is for Greenpoint to argue that its own claim for permanent injunctive relief was mooted by the Conseco II opinion, but that it is a prevailing party based on the preliminary injunctive relief it obtained.

14

perimeter excluding protesters from the areas around the site of the 1996 Democratic National Convention, but whose claims became moot after the convention ended and no final judgment on the merits was ever entered).

The Eighth Circuit has stated that a preliminary injunction can confer prevailing party status if it "alters the course of a pending administrative proceeding and the party's claim for a permanent injunction is rendered moot by the impact of the preliminary injunction." Northern Cheyenne Tribe, 433 F.3d at 1086. Also instructive is the Eighth Circuit's pre-Buckhannon decision in Monahan v. State of Nebraska, 687 F.2d 1164, 1171-72 (8th Cir. 1982) which held that the plaintiff was a prevailing party under § 1988 where he obtained "only preliminary [injunctive] relief" which was modified on appeal, but it "was not a case where [plaintiff] prevailed at the preliminary injunction stage, only to lose later on the merits."

Based on the foregoing reasoning and authorities, the Court concludes Greenpoint is a prevailing party under § 1988 because it obtained court-ordered preliminary injunctive relief that materially altered its legal relationship with the MDOR, as the preliminary injunction blocked the MDOR's enforcement of the unconstitutional abandoned title statutes. Further, the preliminary injunction was never dissolved or reversed, but rather was mooted as a result of the Missouri Supreme Court's decision in Conseco II, which permanently prohibited enforcement of the abandoned title statutes. Greenpoint is therefore entitled to an award of its reasonable attorneys' fees and costs.

**B. Greenpoint's Reasonable Attorneys' Fees and Costs**.

In civil rights cases, the starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The party seeking fees must submit evidence to support the hours worked and the rate claimed. The district court is required to exclude from this initial fee calculation hours that were not "reasonably expended," i.e., that are excessive, redundant or otherwise unnecessary. Id. at 434.

The Court is obligated to provide a "concise but clear explanation" of its reasons for a fee award. McCurry v. Tesch, 824 F.2d 638, 642 (8th Cir. 1987). In determining the amount of fees, the Court is to consider twelve factors:

> (1) [T]he time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley, 461 U.S. at 430 n.3; Winter v. Cerro Gordo County Conservation Bd., 925 F.2d 1069, 1074 n.8 (8th Cir. 1991).

Greenpoint requests attorneys' fees in the amount of $75,123.00 and costs of $2,695.20, and has submitted copies of its billing statements. Although the various bills show the amount of hours incurred and total fees billed, Greenpoint has not informed the Court of the hourly rate of the attorneys who worked on the matter, or provide any of the other information relevant to the fee award under the twelve factors discussed above. In addition, Greenpoint does not provide any specific information concerning the costs it is claiming, and provides no proof of expenditure. Without such information and proof, the Court cannot determine if the costs were necessary or if they were actually incurred.

The defendants have done nothing to assist the Court in its task of determining an appropriate fee award. In fact, the defendants did not address the amount of fees claimed by Greenpoint, but merely stated, "If the issue of fees does arise, the Department requests that it be permitted to file additional responses as to the reasonableness and amount of the fees." Defs.' Response at 5. This type of response is unacceptable. The issue of fees arose when Greenpoint filed its motion for attorneys' fees and costs. The defendants were obligated to address all of the issues presented by the motion for fees, so the Court would have before it all relevant facts and argument to reach its decision, and would not be placed in a position where it could be forced to address issues without adequate information from the parties, or have its time wasted because of the need for additional briefing. Moreover, a party risks waiving the opportunity to make any objection to an award of attorneys' fees

where it does not address the amount of fees claimed. If Greenpoint had offered sufficient support for the amount of its claimed fees and costs, the Court would certainly have proceeded to issue a fee award without any input from the defendants.

The Supreme Court has admonished parties that "[a] request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437. The Eighth Circuit has echoed this admonition. See, e.g., Friends of the Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 883 (8th Cir. 1995). "Ideally, of course, litigants will settle the amount of a fee." Hensley, 461 U.S. at 437. The Court is aware that the parties have so far been unable to reach agreement on the amount of a fee award, but will order them to confer to make a good-faith attempt to resolve the issue of the amount of attorneys' fees. Armed with the knowledge that the Court will award fees to Greenpoint, and with the additional guidance offered below, the parties should be able to settle this issue, and the Court strongly encourages them to do so.

The Court will not award Greenpoint any attorneys' fees incurred in connection with its filing of the Amended Class Action Petition for Damages, or any work on this case after that amended petition was filed, as none of the time expended has lead to any further relief for Greenpoint and appears to have been unnecessary, given Greenpoint's representation to the state court that the Missouri Supreme Court's decision in Conseco II would resolve this case. The Court also will not award fees in this action for work performed in the Conseco case, as those fees were awarded by the state court in the separate action. The Court notes that the billing statements submitted by Greenpoint include time expended for researching and preparing a brief to the Missouri Supreme Court in February 2006, travel to oral argument and oral argument itself, which clearly relates to the Conseco case. There are many other entries which are more ambiguous, from which the Court cannot determine whether the time expended relates to Greenpoint or Conseco.[7]

---

[7] The Court questions why the amount of fees sought in this case is virtually the same as Greenpoint's counsel sought in the Conseco case, given the parties' representation to the state court and statement in this case that they "agreed to stay the Greenpoint case pending a ruling from the Missouri Supreme Court in the Conseco case." Joint Statement at 2. Greenpoint should specifically address this issue in any further briefing.

17

Greenpoint shall make a modified demand for attorneys' fees and costs from the defendants in accordance with the guidelines set forth in this memorandum and order. The parties shall then confer concerning the proper amount of the attorneys' fee and cost award.

If a settlement is not reached, Greenpoint shall file a supplemental memorandum and affidavit in support of its motion for fees and costs. The defendants shall then file a supplemental opposition to the motion for fees and costs.[8] Greenpoint's supplemental memorandum must provide the information required above, address the twelve relevant factors, and include an affidavit of its counsel. Because none of the fees to be awarded were incurred in proceedings before this Court, the Court has no independent knowledge of the case that it can apply to the issue of the proper fee award. Therefore, Greenpoint, as the party seeking fees, must offer more information to the Court concerning the qualifications and hourly rate(s) of counsel, the nature of the work performed, and how the work relates only to Greenpoint. Greenpoint may find it appropriate to resubmit its billing statements with the disallowed time redacted. Greenpoint's requested time must appear clearly from the documents it submits; it cannot expect the Court to compute the relevant time. Greenpoint must also submit explanations for and documentation to establish the costs that it has incurred, or the same will be disallowed. In responding, the defendants may not rely on generalities in opposing the amount of fees or costs, but rather must challenge specific expenditures of time in support of any argument that, for example, the fees sought are excessive or were incurred in connection with the Conseco case.

**Conclusion**.

For the foregoing reasons, the Court concludes that plaintiff Greenpoint Credit, L.L.C. is a prevailing party within the meaning of 42 U.S.C. § 1988, and is entitled to an award of its reasonable attorney's fees and costs. The Court cannot determine the appropriate fee award based on the briefing

---

[8]The parties should select the "Reply (to termed motion)" docket event, which is located in in Civil Events under the "Motions and Related Filings" heading, select "Memoranda, Responses and Replies." The parties should then text in that they are filing a supplemental memorandum in support of or in opposition to the motion for attorneys' fees and costs.

18

currently before it. As a result, Greenpoint's motion for attorneys' fees and costs should be granted, with the amount of the award to be determined later.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Greenpoint Credit, L.L.C.'s Motion for Attorneys' Fees and Costs is **GRANTED**. [Doc. 37]

**IT IS FURTHER ORDERED** that the parties' motions for summary judgment are **DENIED as moot**. [Docs. 22, 29]

**IT IS FURTHER ORDERED** that by **February 4, 2008**, Greenpoint shall send the defendants a modified demand for attorneys' fees and costs, in accordance with the guidelines set forth in this memorandum and order. Thereafter, the parties shall confer in an attempt to resolve the issue of the appropriate amount of attorneys' fees and costs to be awarded to Greenpoint, and shall file a Notice by **February 29, 2008**, stating whether or not settlement of the issue has been reached.

**IT IS FURTHER ORDERED** that in the event no settlement is reached, the following briefing schedule shall apply:

(1) Greenpoint shall file a supplemental memorandum and affidavit in support of its motion for attorneys' fees and costs by **March 10, 2008**.

(2) Defendants shall file a supplemental opposition by **March 24, 2008**.

No further briefing will be permitted.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this __14th__ day of January, 2008.